**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GLADYS FARIAS,<br>Plaintiff,<br>v.<br>TD BANK, N.A., and JOHN DOES 1 to 10,<br>Defendants. | Civil Action No. 25-3287 (JXN)(JSA)<br><br>**OPINION** |

**NEALS**, District Judge

Before the Court is Defendant TD Bank, N.A.'s ("TD Bank" or "Defendant") motion to strike the Amended Complaint or, in the alternative, to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure[1] 12(f) and 12(b)(6). (ECF No. 31.) Plaintiff Gladys Farias ("Plaintiff") opposed the motion (ECF No. 32), and Defendant replied in further support (ECF No. 33). The Court has carefully considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's motion to dismiss is **GRANTED**.

## I. BACKGROUND

Plaintiff is a citizen of New Jersey, and TD Bank is a citizen of Delaware. (Am. Compl. ¶ 4, ECF No. 19; Notice of Removal ("NOR") ¶ 9, ECF No. 1.[2]) On March 15, 2024, Plaintiff opened a checking account at TD Bank with her son, "for personal, family, and household purposes" (the

[1] "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

[2] The Amended Complaint alleges that TD Bank "has branches throughout New Jersey…" (Am. Compl. ¶ 5.) However, as Defendant's Notice of Removal asserts, TD Bank is a national bank association organized under the laws of the United States of America, with its main offices in Delaware at 2035 Limestone Road, Wilmington. (NOR ¶ 9.) Accordingly, TD Bank is a citizen of Delaware for purposes of determining diversity jurisdiction. *See Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303 (2006) (holding that, for purposes of diversity jurisdiction, a national bank is a citizen of the state in which its main office is located, as stated in its charter).

"Account"). (Am. Compl. ¶¶ 12, 15–16.) When Plaintiff opened the Account, she agreed to TD Bank's Personal Deposit Account Agreement ("PDAA").[3] (Def.'s Mot. Br. 3, ECF No. 31-1; PDAA.) Plaintiff deposited a $73,100 check upon opening the Account. (Am. Compl. ¶ 19.) Three days later, on March 18, 2024, TD Bank closed the Account without providing Plaintiff notice and failed to return the money. (*Id.* ¶ 21.) At some unspecified point, "[o]ne or more attempts were made to withdraw monies from an automated teller but "Plaintiff did not receive any money from her [A]ccount." (*Id.* ¶¶ 32, 45.) A week after the ATM "error," Plaintiff contacted TD Bank about the status of her deposited check and submitted a written dispute letter to the Office of the Comptroller of Currency ("OCC") on April 23, 2024. (*Id.* ¶ 46.) TD Bank informed Plaintiff that the check she deposited was not genuine, and the Account was subsequently closed "without any clear explanation." (*Id.* ¶ 22.) When Plaintiff visited the TD Bank branch in person, a representative told her the check was fraudulent and asked her to leave. (*Id.* ¶ 23.) Plaintiff contacted the United States Department of the Treasury, the drawer of the check, to seek clarification and learned that TD Bank had redeemed the check on March 18, 2024. (*Id.* ¶ 24.) On May 13, 2024, during a telephone call with TD Bank, Plaintiff referred the bank to her attorney to authenticate the check. (*Id.* ¶ 27.) On May 14, 2024, TD Bank sent Plaintiff a follow-up letter referencing Plaintiff's complaint to the OCC, stating that her account was restricted and asking her attorney to provide TD Bank with documentation authenticating the check. (*Id.* ¶ 28.)

[3] Defendant has attached to its motion copies of the redacted signature card signed by Plaintiff and her son, Nicolas S. Rojas, for the Account, and of the PDAA that was in effect at the time Plaintiff opened the Account. (*See* Declaration of Michelle Hickey ("Hickey Decl."), ECF Nos. 31-2; *id.*, Exs. A (Signature Card) and B (PDAA), ECF Nos. 31-3, 31-4.) A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). PDAA is integral to the Amended Complaint, as evidenced by Plaintiff's breach of contract claim, in which she seeks to enforce unspecified terms of the contract governing the Account. (*See* Am. Compl. ¶¶ 58-64; Pl.'s Opp'n 14–17.)

On November 16, 2024, Plaintiff filed a complaint with the Consumer Financial Protection Bureau. (*Id.* ¶ 29.) Plaintiff sent dispute letters to TD Bank on December 27, 2024, January 24, 2025, February 21, 2025, and March 19, 2025, regarding the Account, noting her multiple attempts to seek resolution to no avail. (*Id.* ¶¶ 30–31.) The Amended Complaint asserts that "[o]ne or more attempts were made to withdraw monies from an automated teller machine." (*Id.* ¶ 32.) Plaintiff asserts that, despite multiple disputes, TD Bank did not investigate the matter, failed to verify if an error occurred, never issued a statement about the error, and has not returned the Plaintiff's funds. (*Id.* ¶ 34–35.) Plaintiff claims she has "experienced severe emotional distress" due to the financial devastation resulting from TD Bank's unlawful conduct. (*Id.* ¶ 36.)

Plaintiff originally filed this putative class action on March 12, 2025, in the Superior Court of New Jersey, Law Division, Passaic County, against Defendant and John Does 1 to 10. (*See* Compl., ECF No. 1-1.) On April 25, 2025, Defendant removed the case to the District of New Jersey. (*See* NOR.) On August 5, 2025, Defendant filed a Rule 12(b)(6) motion to dismiss.[4] (ECF No. 15.) Rather than opposing the motion, Plaintiff filed an Amended Complaint on August 26, 2025. (ECF No. 19.) The Amended Complaint asserts claims against TD Bank for violations of the Electronic Fund Transfer Act, 15 U.S.C. §§ 1693, *et seq*. ("EFTA") (Count I); breach of contract (Count II); unjust enrichment (Count III); conversion (Count IV); violations of the Expedited Funds Availability Act, 12 U.S.C. §§ 4001, *et seq*. ("EFAA") (Count V); and violations of the New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1, *et seq*. ("NJCFA") (Count VI).

[4] On May 20, 2025, prior to filing its first motion to dismiss and in accordance with the Undersigned's Judicial Preferences and Procedures, TD Bank filed a pre-motion letter seeking leave to file a motion to dismiss the Complaint. (*See* ECF No. 10.) Plaintiff responded to TD Bank's letter opposing its request for dismissal. (*See* ECF No. 11.) On August 1, 2025, the Court granted the pre-motion request and directed TD Bank to file its proposed motion. (ECF No. 14.)

(*Id.* ¶¶ 38–101.) Plaintiff seeks actual, compensatory, incidental, and punitive damages, as well as statutory damages and attorneys' fees under the EFAA, EFTA, and NJCFA. (*See id.* at 14-15.)

On January 20, 2026, Defendant filed a motion to strike the Amended Complaint as untimely pursuant to Rule 12(f) or, in the alternative, to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6). (Def.'s Mot.) Plaintiff opposed the motion (Pl.'s Opp'n, ECF No. 32), and Defendant replied in further support (Def.'s Reply, ECF No. 33). The motion is now fully briefed and ripe for the Court to decide.

## II. LEGAL STANDARD

### A. Rule 12(f)

Rule 12(f) motions to strike are disfavored. *See Gray v. BMW of N. Am., LLC*, 22 F. Supp. 3d 373, 386 (D.N.J. 2014); *see also DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 596-97 (D.N.J. 2015). Motions to strike, therefore, will not be granted "unless the presence of the surplusage will prejudice the adverse party." *Newborn Bros. Co. v. Albion Eng'g Co*., 299 F.R.D. 90, 94 (D.N.J. 2014) (citing *F.T.C. v. Hope Now Modifications, LLC*, No. 09-1204, 2011 WL 883202, at *1 (D.N.J. Mar. 10, 2011)). Nonetheless, the Court's determination on a motion to strike is discretionary. *Id.*; *see also Tonka Corp. v. Rose Art Indus*., 836 F. Supp. 200, 217 (D.N.J. 1993) ("A court possesses considerable discretion in disposing of a motion to strike under Rule 12(f)." (citation omitted)). "Motions to strike are decided on the pleadings alone." *Hanover Ins. Co. v. Ryan*, 619 F. Supp. 2d 127, 132 (E.D. Pa. 2007). Because a motion to strike is not favored, a court will generally not grant such a motion unless the material to be stricken bears "no possible relation to the controversy and may cause prejudice to one of the parties." *See id.* at 133 (citation omitted).

**B. Rule 12(b)(6)**

Rule 12(b)(6) governs motions to dismiss for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss under Rule 12(b)(6), the complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court conducts a three-step inquiry in evaluating a motion to dismiss under Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). First, the Court identifies "the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675. Second, the Court accepts all plaintiff's well-pleaded factual allegations as true and "construe[s] the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). But the Court disregards "legal conclusions and recitals of the elements of a cause of action supported by mere conclusory statements." *Davis v. Wells Fargo*, 824 F.3d 333, 341 (3d Cir. 2016). Third, the Court considers "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

**C. Rule 9(b)**

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting

fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally," Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where, and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III. DISCUSSION

Defendant moves to strike the Amended Complaint as untimely pursuant to Rule 12(f) or, in the alternative, to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6). (*See generally* Def.'s Mot.) The Court addresses each in turn.

### A. Defendant's Motion to Strike

Defendant moves to strike Plaintiff's Amended Complaint for two reasons. First, Defendant asserts that the Amended Complaint is "untimely and improper." (Def.'s Mot. Br. at 7.) Defendant argues that Plaintiff filed the Amended Complaint "long after the twenty-one days permitted under Rule 15(a) to file a responsive pleading as of right had elapsed following TD Bank's pre-motion letter" and without TD Bank's consent or leave of court. (*Id.*) Defendant filed its pre-motion letter on May 20, 2025 (*see* ECF No. 10), its first motion to dismiss on August 5, 2025 (*see* ECF No. 15), and Plaintiff filed her Amended Complaint on August 26, 2025 (*see* Am.

Compl.). Rule 15(a) provides, in relevant part, that "[a] party may amend its pleading once as a matter of course no later than," …21 days after service of a motion under Rule 12(b), (e), or (f)…" Fed. R. Civ. P. 15(a)(1)(B). Although Plaintiff did not amend until three months after Defendant's pre-motion letter, she filed the Amended Complaint exactly 21 days after Defendant's original motion to dismiss, in accordance with Rule 15(a)(1)(B). Accordingly, the amendment was timely and required neither Defendant's consent nor leave of Court.

Second, Defendant asserts that Plaintiff lacks good cause for the delayed amendment. (Def.'s Mot. Br. at 7.) Defendant argues that the Amended Complaint fails to address TD Bank's pre-motion arguments, contradicts Plaintiff's prior position that it would oppose the motion on the merits, raises a claim that could have been included in the original Complaint, seeks to delay dismissal, creates duplicative motion practice, and wastes the parties' and the Court's time and resources. (*Id.*) Although the Court appreciates Defendant's interest in the efficient adjudication of this matter, Defendant does not argue that the Amended Complaint contains "any redundant, immaterial, impertinent, or scandalous material." Fed. R. Civ. P. 12(f). Moreover, the Third Circuit has "repeatedly stated [a] preference that cases be disposed of on the merits whenever practicable." *Hritz v. Woma Corp*., 732 F.2d 1178, 1181 (3d Cir. 1984).

Pursuant to Rule 12(f), "a 'court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.'" *Shaikh v. Internal Revenue Serv.*, No. 18-17695, 2020 WL 13828564, at *2 (D.N.J. May 29, 2020) (quoting Fed. R. Civ. P. 12(f)), "Motions to strike are decided on the pleadings alone" and courts "exercise 'considerable discretion'" when assessing them. *Deery v. Crystal Instruments Corp.*, No. 13-198, 2013 WL 4517867, at *1 (D.N.J. Aug. 26, 2013) (quoting *Tonka Corp.*, 836 F. Supp. at 217). Since such motions are viewed as severe measures, they are ordinarily "denied unless the allegations have no

possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues." *Id.* (citation omitted). Therefore, motions to strike are "highly disfavored" by the courts and "granted sparingly." *Eisai Co. v. Teva Pharms. USA, Inc.*, 629 F. Supp. 2d 416, 424 (D.N.J. 2009) (citation omitted). Further, the Court notes that the Third Circuit prefers adjudications "on the merits," rather than on procedural matters. *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486-87 (3d Cir. 1990).

Accordingly, Defendant fails to meet the standard for striking the Amended Complaint. Defendant's motion to strike is therefore **DENIED**.

**B. Defendant's Motion to Dismiss**

Defendant moves to dismiss each of Plaintiff's six causes of action: (1) violation of the Electronic Funds Transfer Act; (2) breach of contract; (3) unjust enrichment; (4) conversion; (5) violations of the Expedited Funds Availability Act; and (6) violations of the New Jersey Consumer Fraud Act. The Court addresses each claim in the order in which it appears in the Amended Complaint.

***i. Electronic Funds Transfer Act (Count I)***

Plaintiff's EFTA claim is time-barred. Count I of the Amended Complaint alleges TD Bank violated the EFTA's error resolution provision, 15 U.S.C. § 1693f. Plaintiff states she received no funds during an ATM transaction, an error under § 1693f(f)(5). (Am. Compl. ¶ 45.) Plaintiff claims she notified TD Bank timely, via oral and written notices within 60 days under § 1693f(a). (*Id.* ¶ 48.) Specifically, Plaintiff asserts that, one week after the error occurred, she contacted TD Bank regarding the status of her deposited check and submitted a written dispute letter to the OCC on April 23, 2024. (*Id.* ¶ 46.) Plaintiff spoke with TD Bank by phone again on May 13, 2024, and followed up with a written dispute letter to TD Bank on May 14, 2024. (*Id.* ¶ 47.) Plaintiff asserts

that, upon receiving these timely notices under § 1693f(a), TD Bank was required to "investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days." (*Id.* ¶ 49, citing 15 U.S.C. § 1693f(a)(3).) Plaintiff further alleges that TD Bank failed to report the results of its investigation to Plaintiff within the 10 business days required by § 1693f(a)(3). (*Id.* ¶ 50.) Plaintiff also claims that pursuant to § 1693f(c), TD Bank was required to provisionally credit the Account for the disputed amount after failing to report the investigation's results within 10 business days as required by § 1693f (a)(3), but failed to do so. (*Id.* ¶ 51.) Plaintiff claims that on December 27, 2024, she sent TD Bank a dispute letter about the account error and requested all investigation documentation. She sent similar letters on January 24, February 21, and March 19, 2025, but received no response, constituting another error under § 1693f(f)(6). (*Id.* ¶¶ 52–54.) Plaintiff asserts that, to this day, TD Bank has not investigated the error in good faith, determined whether the error occurred, or provided Plaintiff with any statement regarding the error or the findings of its investigation, thereby violating the EFTA. (*Id.* ¶ 55.)

The EFTA and its implementing regulations "impose, in certain situations, liability on banks for unauthorized electronic fund transfers...drawn against their customers' accounts." *Marquess v. Pa. State Emples. Credit Union*, 427 F. App'x 188, 188–89 (3d Cir. 2011) (citing 15 U.S.C. § 1693 et seq.; 12 C.F.R. § 205.6 *et seq*.). Congress enacted the EFTA "to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems," especially regarding individual consumer rights. *Perry v. OCNAC #1 Fed. C.U.*, 423 F. Supp. 3d 67, 77 (D.N.J. 2019) (citations omitted). The EFTA "provides a private cause of action for a consumer to seek damages for financial institutions' unauthorized electronic transfer of funds from the consumer's account." *Scheffler v. TD Bank,*

*N.A.*, No. 18-06688, 2019 WL 192651, at *4 (D.N.J. Jan. 15, 2019) (quoting *Golden-Koether v. JPMorgan Chase Bank, N.A.*, No. 11-3586, 2011 WL 6002979, at *2 (D.N.J. Nov. 29, 2011)).

Section 1693f(a) of the EFTA requires financial institutions to "investigate [an] alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days," if the customer provides notice of the purported error within sixty days of the financial institution having transmitted to the customer a periodic statement containing the error. 15 U.S.C. § 1693f(a)(3). The EFTA also mandates specific steps the financial institution must take depending on the investigation results. 15 U.S.C. § 1693f(b)–(d). The EFTA defines seven instances of "error" which require the financial institution to undertake certain procedures for resolution, including "an unauthorized electronic fund transfer" and "a consumer's request for additional information or clarification concerning an electronic fund transfer or any [required] documentation." 15 U.S.C. § 1693f(f)(1)–(7); *see also Beaman v. Bank of Am., N.A.,* No. 21-20561, 2024 WL 3219224, at *9 (D.N.J. June 28, 2024) (citing 12 C.F.R. § 1005.11(a)(1)(vii); 12 C.F.R. § 1005, Supp. I at 11(a) (Official Interpretation of § 1005.11(a)) ("A request for documentation or other information must be treated as an error unless it is clear that the consumer is requesting a duplicate copy for tax or other record-keeping purposes.")).

By statute, EFTA claims must be made "within one year from the date of occurrence of the violation." 15 U.S.C. § 1693m(g). The statute of limitations for the EFTA accrues ten days after the consumer gives either oral or written notice of the alleged error[5] to the subject financial

[5] The Act defines "error" as:

> (1) an unauthorized electronic fund transfer; (2) an incorrect electronic fund transfer from or to the consumer's account; (3) the omission from a periodic statement of an electronic fund transfer affecting the consumer's account which should have been included; (4) a computational error by the financial institution; (5) the consumer's receipt of an incorrect amount of money from an electronic terminal; (6) a consumer's request for additional information or clarification concerning an electronic fund transfer or any documentation required by this subchapter; or (7) any other error described in the regulations of the Board.

institution.15 U.S.C. § 1693f(a); *Berenson v. Nat'l Fin. Servs., LLC*, 403 F. Supp. 2d 133, 144 (D. Mass. 2005). Notice to a financial institution is provided once "a consumer takes steps reasonably necessary to provide the institution with the pertinent information, whether or not a particular employee or agent of the institution actually receives the information." 12 C.F.R. § 205.6(b)(5)(i); *Perry*, 423 F. Supp. 3d at 77. The EFTA requires that a financial institution promptly correct any errors. § 1693f(b).

Plaintiff first alleged facts supporting her EFTA claim in the Amended Complaint, filed on August 26, 2025. (*See* Am. Compl. ¶¶ 32, 38–55.) The Amended Complaint alleges that "one or more attempts were made to withdraw monies from an [ATM]" (*Id.* ¶ 32). It further claims that Plaintiff "did not receive any money from her [A]ccount [in] the ATM transaction, which constitute[d] an error on Plaintiff's TD Bank [A]ccount pursuant to 15 U.S.C. § 1693f(f)(5)." (*Id.* ¶ 45.) "A week after the error occurred, Plaintiff contacted TD Bank regarding the status of her deposited check and submitted a written dispute letter to the OCC on April 23, 2024." (*Id.* ¶ 46.) Based on these allegations, the limitations period began to run on May 3, 2024—ten (10) days after Plaintiff alleges she notified TD Bank of the "error" with the Account. The one-year limitations period therefore expired on May 3, 2025, more than three months before Plaintiff filed the Amended Complaint on August 26, 2025.

Next, to the extent Plaintiff alleges that her EFTA claim is factually grounded not only on the attempted ATM withdrawal but also on TD Bank's alleged failure to investigate Plaintiff's dispute and communicate the results of its investigation, those events also occurred more than one year before Plaintiff filed the Amended Complaint. With respect to a failure-to-investigate claim, "[i]n light of the ten-day statutory period within which a financial institution must provide a written

---

15 U.S.C. § 1693f(f).

response, the statute of limitations begins to run ten days after the consumer provides the oral or written notice of the alleged error to the financial institution." *Golden–Koether*, 2011 WL 6002979, at *2. The Amended Complaint expressly alleges that "Plaintiff spoke with TD Bank *again* by phone on May 13, 2024, and followed up with a written dispute letter to TD Bank on May 14, 2024," and that TD Bank failed to provide the investigative results or provisional credit within the next 10 business days—by May 28, 2024. (*Id*. ¶¶ 48-51) (emphasis added.) Under these calculations, the one-year limitations period expired on May 28, 2025, more than two months before Plaintiff filed the Amended Complaint on August 26, 2025.

Finally, in her opposition, Plaintiff contends that, under Rule 15(c), her EFTA claims are timely because the Amended Complaint relates back to the original Complaint, filed on March 12, 2025. (Pl.'s Opp'n 8–9.) As noted in TD Bank's reply, "the Third Circuit has stated that 'the touchstone' of the relation-back analysis is whether would-be defendants had 'fair notice' of the claim within the limitations period." (Def.'s Reply 3, quoting *Se. Pennsylvania Transportation Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 349 (3d Cir. 2021).) Plaintiff's original Complaint did not assert an EFTA claim; in fact, the current EFTA claim is predicated on an alleged event—an attempted ATM withdrawal—that was not referenced in the original Complaint. (*See generally* Compl.) As a result, TD Bank did not have fair notice of the claim within the limitations period, and Plaintiff provides no explanation for her failure to assert the claim earlier—before the statute of limitations expired.

Ultimately, Plaintiff's EFTA claims are time-barred because the cause of action arose more than a year before Plaintiff filed the Amended Complaint. Accordingly, TD Bank's motion to dismiss Plaintiff's EFTA claims as time-barred is **GRANTED** and Count I of the Amended Complaint is **DISMISSED *with prejudice***.

***ii. Breach of Contract (Count II)***

Plaintiff fails to plausibly allege a breach of contract claim. In Count II, Plaintiff alleges that she entered into a contract with TD Bank when she opened the Account. (Am. Compl. ¶ 59.) Plaintiff claims TD Bank breached the contract by "fail[ing] to make [] funds available shortly after she deposited any checks" and by restricting her access to the Account without cause. (*Id.* ¶¶ 60–63.)

"To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: (1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013). To state a valid claim for breach of contract, a plaintiff must specifically identify the contract and the term allegedly breached. *Folger v. Navy Fed. Credit Union*, No. 22-0019, 2022 WL 16709796, at *4 (D.N.J. Nov. 4, 2022). Where a plaintiff fails to identify the contract or the provision that was breached, that "deficiency alone warrants dismissal." *Id.* (citing *Khorchid v. 7-Eleven, Inc.*, No. 18-8525, 2018 WL 5149643, at *9 (D.N.J. Oct. 22, 2018) (holding that "[f]ailure to allege the specific provisions of contracts breached is grounds for dismissal.")); *see also Skypala v. Mortgage Electronic Registration Systems, Inc.*, 655 F. Supp. 2d 451, 459 (D.N.J. 2009) (dismissing breach of contract claim because complaint did not identify provisions plaintiff asserted were breached).

Here, Plaintiff argues that TD Bank breached the terms of the PDAA (*see* Pl.'s Opp'n 14); however, the Amended Complaint fails to identify the contract at issue or cite any specific

provisions supporting a breach.[6] (*See generally* Am. Compl.) "Plaintiff cannot plausibly allege a breach of contract on mere say-so: Plaintiff 'must, at a minimum, identify the contracts and provisions breached.'" *Scheffler*, 2019 WL 192651, at *2 (quoting *Eprotec Pres., Inc. v. Engineered Materials, Inc*., No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011)). Because Plaintiff fails to identify the contract or a specific provision that TD Bank allegedly breached in the Amended Complaint, she cannot sustain her breach of contract claim against TD Bank. *See Vincent Cusumano Architect P.C. v. Berkshire Hathaway Direct Ins. Co.*, No. 23-22970, 2025 WL 957699, at *6 (D.N.J. Mar. 29, 2025). Accordingly, TD Bank's motion to dismiss Plaintiff's breach of contract claim is **GRANTED** and Count II of the Amended Complaint is **DISMISSED *without prejudice***.

***iii. Unjust Enrichment (Count III)***

Plaintiff fails to plausibly allege unjust enrichment at Count III of the Amended Complaint. (*See* Am. Compl. ¶¶ 65–73.) Plaintiff alleges that TD Bank unjustly enriched itself by redeeming her check and retaining those funds without paying them to Plaintiff, thus receiving a benefit at Plaintiff's expense. (*Id.*)

"To state a claim under a quasi-contract theory of unjust enrichment, a plaintiff must allege '(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable.'" *Vincent Cusumano Architect P.C.*, 2025 WL 957699, at *6 (quoting *Barnert Hosp. v. Horizon Healthcare Servs., Inc*., No. 06-3266, 2007 WL 1101443, at *6 (D.N.J. Apr. 11, 2007)). "A claim of unjust enrichment will not stand when an express

---

[6] Plaintiff's Amended Complaint cannot be amended or supplemented by an opposition brief. *See Son v. Lynch*, No. 24-01051, 2025 WL 850921, at *3 (D.N.J. Mar. 17, 2025) (citing *Pennsylvania ex rel. v. Zimmerman v. Pepsico*, 836 F.2d 173 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.")). Plaintiff's opposition also appears to include facts not expressly set forth in her Amended Complaint. (*See* Pl.'s Opp'n 14.)

contract exists concerning the identical subject matter." *Spano v. JP Morgan Chase Bank, NA*, 521 Fed. Appx. 66, 70 (3d Cir. 2013).

Here, it is uncontested that an express contract, the PDAA, expressly governed Plaintiff and TD Bank's relationship. (*See* Am. Compl. ¶ 59.) Plaintiff argues in her Opposition that she may plead both Unjust Enrichment and Conversion in the alternative to her breach of contract claim. (Pl.'s Opp'n, at 15–16.) However, when a plaintiff's unjust enrichment claim relies on the same facts as other claims, especially the breach of contract claim, the quasi-contract claim is dismissed. *See Armstrong v. BMW of N. Am., LLC*, No. 23-3046, 2025 WL 957889, at *17 (D.N.J. Mar. 31, 2025); *see also Hardy v. Volkswagen Grp. of Am., Inc.*, No. 24-8251, 2025 WL 1409820, at *19 (D.N.J. May 14, 2025). Moreover, the Third Circuit has approved the dismissal of an unjust enrichment claim when a plaintiff seeks simultaneous relief for a breach of contract claim. *See Estate of Gleiberman v. Hartford Life Ins. Co.*, 94 Fed. Appx. 944 (3d Cir. 2004). Thus, Plaintiff cannot plead her unjust enrichment claim, even in the alternative, because it rests on a valid contract between Plaintiff and TD Bank. *See Armstrong*, 2025 WL 957889, at *17. Accordingly, TD Bank's motion to dismiss Plaintiff's unjust enrichment claim is **GRANTED** and Count III is **DISMISSED** ***with prejudice***.

***iv. Conversion (Count IV)***

Plaintiff's claim in Count IV that TD Bank committed the tort of conversion fails as a matter of law. (Am. Compl. ¶¶ 74–81.) Plaintiff contends that she had property rights in the funds deposited into the Account with TD Bank; that Defendant wrongfully retained the funds and interfered with her property rights; and that TD Bank has denied Plaintiff access to the funds, thereby converting them to its own. (*Id.* ¶¶ 75, 77, 80.)

"The elements of common law conversion under New Jersey law are (1) the existence of property, (2) the right to immediate possession thereof belonging to [the] plaintiff, and (3) the wrongful interference with that right by [the] defendant." *Cap. Health Sys., Inc. v. Veznedaroglu*, No. 15-8288, 2017 WL 751855, at *10 (D.N.J. Feb. 27, 2017) (internal quotations omitted). In New Jersey, the economic loss doctrine bars tort recovery where the plaintiff's "entitlement only flows from contract." *Red Hawk Fire & Sec., LLC v. Siemens Indus. Inc.*, 449 F. Supp. 3d 449, 462 (D.N.J. 2020) (quoting *Chen v. HD Dimension Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. No. 15, 2010)); *see also Kam Int'l v. Franco Mfg. Co. Inc.*, No. 10-02733, 2010 WL 5392871, at *5 (D.N.J. Dec. 22, 2010). Because "monetary loss can be repaid in whole by other money," it is considered a "mere debt" between parties. *Kam Int'l*, 2010 WL 5392871, at *4. However, if a plaintiff contends that the defendant breached a duty owed to the plaintiff independent of its contractual obligations, the economic loss doctrine does not apply. *Atlas Acquisitions, LLC v. Porania, LLC*, No. 18-17524, 2019 WL 6130774, at *3 (D.N.J. Nov. 19, 2019). The purpose of the economic loss rule is to prevent turning a breach of contract claim into an issue of tort law. *Eun Ju Song v. Bank of Am., N.A.*, No. 14-3204, 2015 WL 248436, at *3 (D.N.J. Jan. 20, 2015).

Here, under the economic-loss doctrine, Plaintiff cannot recover in tort for conduct squarely governed by contract, here, the PDAA. As with her claim for unjust enrichment, Plaintiff's claim for conversion is based on rights and obligations expressly governed by the PDAA she signed when she opened the Account. (Am. Compl. ¶ 59.) Because Plaintiff's allegations derive from TD Bank's alleged obligation to maintain and permit access to Plaintiff's funds, Plaintiff's entitlement, if any, flows from the contract between the parties. *See Red Hawk Fire & Sec., LLC*, 449 F. Supp. 3d at 462. Accordingly, TD Bank's motion to dismiss Plaintiff's

conversion claim against TD Bank is **GRANTED** and Count IV of the Amended Complaint is **DISMISSED** ***with prejudice***.

#### *v. Expedited Funds Availability Act (Count V)*

Next, in Count V, Plaintiff argues that TD Bank failed to provide adequate notice of an extension of time for when Plaintiff's funds would become available and failed to make those funds available to Plaintiff within a reasonable time. (Am. Compl. ¶¶ 82–92.)

Congress adopted the EFAA "to accelerate the availability of funds to bank depositors and to improve the Nation's check payment system." *Parks v. Com. Bank, N.A.*, 872 A.2d 1116, 1120 (App. Div. 2005) (quoting *Bank One Chicago, N.A. v. Midwest Bank & Trust Co.*, 516 U.S. 264, 266 (1996)). The Act enables the Federal Reserve Board of Governors ("FRBG") to create and implement procedures to expedite banks' ability to collect and return checks. *Id.* The EFAA limits how long a bank can hold deposited funds. Federal Reserve Regulation CC generally requires depository banks to make funds deposited by check available for withdrawal no later than the business day after the deposit but permits longer delays in limited circumstances. *See* 12 C.F.R. §§ 229.10(c), 229.13. More specifically, the EFAA requires a depository bank to make funds deposited in an account via local check available for withdrawal no later than the second business day after a customer deposits them. 12. C.F.R. § 229.12(b). The Act specifically provides that banks are civilly liable to individuals who suffer injury because of an EFAA violation. 12 U.S.C. § 4010(a).

To properly bring a claim under the EFAA, Plaintiff must present evidence that it made a specific type of deposit as defined by the EFAA and that TD Bank held that deposit beyond the

timeframe allowed by the statute. *See* 12 U.S.C. § 4002 (defining specific deposit types and required timeframes for when funds must be made available for these specific types of deposits). *Little Donkey Enters. Washington, Inc. v. U.S. Bancorp,* 136 F. App'x 91, 92 (9th Cir. 2005). Merely placing a hold on or freezing funds in an account *after the deposits have been made available* is not a violation of the Funds Act and thus does not support a claim for civil liability under 12 U.S.C. § 4010. *Id.* Here, TD Bank froze Plaintiff's funds without making funds available.

However, where a check is deposited to a bank that has reason to believe that the check is uncollectible, the next-day availability rule does not apply. 12 C.F.R. § 229.13(e)(1). The regulation states that "[r]easonable cause to believe a check is uncollectible requires the existence of facts that would cause a well-grounded belief in the mind of a reasonable person." *Id.* The language of the Act itself mirrors this language when it discusses the exception to the next-day deposit rule:

> [t]itle shall not apply with respect to any check deposited in an account at a depository institution if the receiving depository institution has reasonable cause to believe that the check is uncollectible from the originating depository institution. For purposes of the preceding sentence, reasonable cause to believe requires the existence of facts which would cause a well-grounded belief in the mind of a reasonable person.

12 U.S.C. § 4003(c)(1).

Here, Plaintiff concedes that TD Bank "restricted" or "closed" the Account after the Check, which was drawn on the U.S. Treasury, was deposited. (*See* Am. Compl. ¶¶ 19, 21–22, 24, 28.) According to the PDAA, TD Bank has "sole discretion" to take that action where, as here, TD Bank suspects that a deposited check is "not genuine" or "fraudulent." (PDAA, 9; Am. Compl. ¶¶ 22–23.) And a bank does not face civil liability under the EFAA for taking such action. *See Brooks v. First Nat'l Bank of Omaha, Nat'l Ass'n*, No. 24-1148, 2024 WL 2965218, at *2 (N.D. Tex. May 16, 2024), *report & recommendation adopted*, 2024 WL 2970099 (June 12, 2024) (holding that

plaintiff, who alleged account freeze immediately after deposit of U.S. Treasury check, had not "allege a plausible claim under the EFAA"); *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 586–87 (D. Md. 2016) (dismissing EFAA claim with prejudice where plaintiff alleged that defendant bank froze plaintiff's bank account after posting proceeds of I.R.S. refund check to account); *Anderson v. USAA Fed. Sav. Bank*, No. 13-1316, 2013 WL 4776728, *2 (D.S.C. Sept. 4, 2013) (recognizing that "several court[s] have held that the EFAA does not provide a civil claim in situations where the bank has frozen a depositor's accounts"); *Frost Nat'l Bank v. Parker*, No. 95-2150, 1999 WL 33438078, *13–14 (C.D. Ill. Feb. 26, 1999) (finding no EFAA violation where bank froze account for suspected check fraud in accordance with deposit agreement).

Plaintiff's allegations in Count V, that TD Bank failed to provide adequate notice of an extension of time for when Plaintiff's funds would become available and failed to make those funds available to Plaintiff within a reasonable time (Am. Compl. ¶¶ 82–92), do not sufficiently allege an EFAA claim based upon the suspected fraudulent nature of the deposit. Accordingly, TD Bank's motion to dismiss Plaintiff's EFAA claim is **GRANTED**, and Count V of the Amended Complaint is **DISMISSED** ***without prejudice***.

***vi. Violation of the New Jersey Consumer Fraud Act (Count VI)***

Plaintiff's NJCFA claim fails to meet the heightened pleading requirements of Rule 9(b). In Count VI, Plaintiff asserts a claim sounding in fraud for violation of the NJCFA. (Am. Compl. ¶ 93–101.) Plaintiff alleges that TD Bank engaged in "unconscionable commercial practices, deception, fraud, false promises, false pretenses and/or misrepresentations in the sale and subsequent performance of the sale of merchandise in violation of the CFA." (*Id.* ¶ 97.) Plaintiff also contends that she suffered an ascertainable loss, including the $73,100 check she attempted to deposit in the Account. (*Id.* ¶ 98.) Specifically, Plaintiff asserts that TD Bank misrepresented its

ability to determine whether a check is fraudulent, failed to comply with the EFTA and EFAA, failed to provide Plaintiff with account statements regarding the alleged error, and affirmatively represented that the check was fraudulent and that it retained Plaintiff's funds, among other claims. (*Id.* ¶ 99.)

To sustain a claim under the NJCFA, a plaintiff must demonstrate "(1) unlawful conduct by defendant, (2) ascertainable loss, and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Ciser v. Nestle Waters N. Am. Inc.*, 596 F. App'x 157, 160 (3d Cir. 2015). "It is well-established that NJCFA claims must meet the heightened pleading requirements of [Rule] 9(b)." *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 538 (D.N.J. 2011). To satisfy this standard, "a plaintiff must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Id.* (quoting *Frederico*, 507 F.3d at 200). This requires a plaintiff to allege "the who, what, when, where, and how of the events at issue." *U.S. ex rel. Moore & Co., P.A.*, 812 F.3d at 307.

Here, beyond generalized allegations that TD Bank misrepresented a valid check as fraudulent, violated the EFAA and EFTA, and unlawfully retained Plaintiff's funds, Plaintiff fails to plausibly plead any fraudulent act or omission by TD Bank in support of her NJCFA claim. Notably, the PDAA signed by the Plaintiff when opening the Account explicitly authorized TD Bank to hold transactions suspected of fraud, request additional information, and freeze or close accounts in connection with suspected fraudulent transactions. (*See* PDAA). Because the contract expressly allowed TD Bank to freeze accounts, retain funds, and close accounts based on suspicion of fraud, Plaintiff cannot establish a claim under the NJCFA. *See Urbino v. Ambit Energy Holdings, LLC,* No. 14-5184, 2015 WL 4510201, at *3–4 (D.N.J. July 24, 2015). Furthermore, the

Amended Complaint does not allege an ascertainable loss caused by a misrepresentation. At most, the Amended Complaint describes a contractual dispute over whether the Plaintiff is entitled to the proceeds of a check that TD Bank believed showed indicia of fraud. The claim also fails because Plaintiff does not specify the relevant contractual language or the breach.

Because the Amended Complaint does not allege that TD Bank misrepresented the terms of the account or otherwise engaged in conduct that directly caused the Plaintiff to suffer an ascertainable loss, Plaintiff's NJCFA claim must be dismissed. Accordingly, TD Bank's motion to dismiss the Plaintiff's NJCFA claim is **GRANTED** and Count VI of the Amended Complaint is **DISMISSED** ***without prejudice***.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Amended Complaint (ECF No. 31) is **GRANTED**. In the Amended Complaint (ECF No. 19), Counts I, III, and IV are **DISMISSED** ***with prejudice***, and Counts II, V, and VI are **DISMISSED** ***without prejudice***. The Court provides Plaintiff thirty (30) days from the date of this Opinion to file an amended pleading curing the deficiencies identified herein. Otherwise, the Court may dismiss the remaining Counts with prejudice. An appropriate Form of Order accompanies this Opinion.

**DATED: 9/29/2026**

**JULIEN XAVIER NEALS**
**United States District Judge**